## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEMOND CHRISTMAS,           )
          )
       **Plaintiff,**         )
          )
vs.                         )          **Case No. 17−cv−1006−JPG**
          )
WEXFORD HEALTH SOURCES, INC.,    )
ROBERT SHEARING,          )
JOHN TROST,               )
ERIC JOHNSON,           )
RYAN SUTTERER,          )
CHRISTINE LOCHHEAD, and     )
GAIL WALLS,               )
          )
       **Defendants.**       )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Demond Christmas, an inmate in Menard Correctional Center, brings this action

for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests

declaratory relief, a permanent injunction, and monetary damages. This case is now before the

Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless.  *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.  The Court also considered Plaintiff's Memorandum in Support of his Compliant at Doc. 1-1.

**The Complaint**

Plaintiff alleges that prior to arriving at Menard in 2012, he was assaulted by an officer at Cook County Jail, which resulted in severe facial damage, including a right orbital fracture. (Doc. 1, p. 11).   After the initial assault, Plaintiff was taken to John Stroger Hospital in Chicago in July 2012, where a CAT scan was performed.  *Id.*  Although the CAT scan showed the broken bones, Plaintiff's face was still swollen, precluding surgery, and so the specialist ordered a follow-up visit.  *Id.*

Prior to receiving his follow-up visit at Stroger, Plaintiff was transferred to the Illinois Department of Corrections ("IDOC") and assigned to the Stateville Northern Reception Center, where Wexford Health Sources is the designated health care provider.  *Id*.  Plaintiff informed

Stateville officials about his facial fractures and requested care. *Id.* On November 14, 2012, Plaintiff was transferred to Menard Correctional Center. *Id.* Amy Lang, who is not a defendant here, performed a screening upon entry into Menard, but although she noted the fracture of the right eye socket, she erroneously noted that Plaintiff denied any pain. *Id.* Plaintiff alleges he was actually experiencing facial pain, severe headaches, dizziness, double vision, blurry vision, and ringing in his ears. *Id.*

Plaintiff began requesting to see the optometrist, but despite writing a letter on December 14, 2012 and again on January 14, 2013, Plaintiff did not actually get to see Dr. Eric Johnson until January 30, 2013. (Doc. 1, p. 12). Upon information and belief, Plaintiff believes that Johnson was an employee of Eyecare Solutions, who was under contract with Wexford to provide medical optometry services. *Id.* Johnson failed to examine Plaintiff, and when Plaintiff told him that the Stroger specialist had recommended surgery, Johnson told Plaintiff that surgery would not fix his problems and that Wexford would not approve surgery due to the expense. *Id.* Johnson referred Plaintiff to the on-site medical director. *Id.* Plaintiff submitted a sick call slip 6 weeks later on March 15, 2013 when he still had not been seen; an unnamed nurse said she would put him in to see the doctor and gave him some Tylenol. (Doc. 1, pp. 12-13).

On March 23, 2013, Plaintiff's blurry vision caused him to misjudge the edge of his bunk and fall off the top. (Doc. 1, p. 13). He hit his head on the floor. *Id.* Plaintiff saw Dr. Shearing on March 25, 2013. *Id.* Shearing told Plaintiff that he did not need surgery and that surgery was too costly. *Id.* Plaintiff told Shearing about his medical history and his current pain and suffering. *Id.* Shearing prescribed 2 weeks of ibuprofen. *Id.* Plaintiff's medical records show that Shearing received Plaintiff's records from Cook County Jail on April 26, 2013. (Doc. 1, p. 20).

Plaintiff saw Shearing again on April 26, 2013. (Doc. 1, p. 14). Shearing again reiterated that Plaintiff would not be receiving surgery, no matter how many grievances he filed. *Id.* Shearing denied that any treatment, including pain medication, was necessary. *Id.* Plaintiff alleges that Shearing falsified the April 26, 2013 medical record entry to cover up his deliberate indifference. *Id.* Plaintiff wrote a grievances on March 25, 2013 regarding his medical care, to which Gail Walls responded on June 11, 2013, stating "You have seen the eye doctor, medical doctors, and nurses for sick call since being at Menard CC. The last time was on April 26, 2013 by Dr. Shearing. At that time he wrote you had received all treatment necessary for your issue and no further follow-up was necessary. If you have further issues, please put in for sick call." *Id*. (Doc. 1, p. 47). Plaintiff wrote a grievance on Walls' response on June 18, 2013. (Doc. 1, p. 15).

In addition to Plaintiff's pain, he also experienced constant pus drainage from his right eye. *Id.* Plaintiff continued to experience pain and suffering. *Id.* He learned sometime in 2014 that Shearing had been replaced as site medical director and submitted another sick call request slip. *Id.* Plaintiff was seen on October 5, 2014 for his eye and nasal problems, and was told that he'd be referred to the MD and the eye doctor. *Id.* Plaintiff was seen by the new Wexford Medical Director, Dr. Trost, on October 9, 2014. (Doc. 1, p. 16). Trost prescribed Claritin, Bactrim, and Bleph to address the pus drainage and Plaintiff's allergies and referred Plaintiff to the eye doctor. *Id*.

Plaintiff was seen by on-site optometrist Dr. Christine Lochhead on October 23, 2014. *Id.* Lochhead performed a brief eye exam, and prescribed a warm compress. *Id.* She told Plaintiff that Wexford would not prescribe surgery because Plaintiff's condition did not meet

Wexford's policy requirements and because Plaintiff's injury had occurred prior to his time in IDOC custody. *Id.*

Plaintiff saw on-site optometrist Lewis J. Eyrich on March 7, 2016. (Doc. 1, pp. 16-17). Plaintiff alleges that Eyrich performed the first complete eye examination he received at that time. (Doc. 1, p.17). Eyrich recommended an outside referral based on the ongoing mucus discharge that had not responded to treatment. *Id.* The referral was approved on March 15, 2016. *Id.* Plaintiff saw Dr. Donald Unwin of Quantum Vision Center ("QVC") on April 12, 2016, who recommended a surgical consult for Plaintiff's broken right eye socket. *Id.* Eyrich also recommended a follow-up for potential glaucoma. *Id.* Plaintiff saw Trost again on April 29, 2016, who in turn referred Plaintiff back to the on-site optometrist. *Id.* When Plaintiff next saw the on-site optometrist, he told Plaintiff he did not understand why the April 12, 2016 recommendation had not been acted on and submitted a request for referral, which was approved on July 6, 2016. (Doc. 1, p. 18).

Plaintiff went off-site on August 15, 2016 and saw another unidentified eye specialist with QVC who also agreed that Plaintiff needed surgery, but declined to perform it because QVC was not equipped for the procedure. (Doc. 1, p. 18). This optometrist also recommended that Plaintiff be referred to a hospital for surgery and told Plaintiff that he could go blind without the surgery. *Id.* However, once Plaintiff returned to Menard, Trost delayed following up with Plaintiff and submitting his paperwork. *Id.* As a result, Wexford Utilization review did not approve the referral until September 23, 2016, and Plaintiff was not actually scheduled for a consultation until October 11, 2016. *Id.* The consultation was scheduled for December 1, 2016. *Id.* Plaintiff also saw Dr. Sutterer on October 7, 2016. *Id.*

At the consultation, the specialist agreed that surgery was necessary, exactly as the specialist at Stroger had recommended more than 4 years prior. (Doc. 1, p. 20). Plaintiff finally had surgery on March 7, 2017. (Doc. 1, p. 21). Plaintiff was also told at the December 1 visit that the pus draining from his eyes was due to his tear ducts being blocked, and was the cause of fevers, headaches, dizziness, double vision, and blurry vision. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

**Count 1** – Wexford's policies regarding cost and eye care delayed Plaintiff's medical treatment for more than 4 years, prolonging his pain and suffering in violation of the Eighth Amendment;

**Count 2** – Wexford, Shearing, Trost, Johnson, Sutterer, Lochhead, and Walls were deliberately indifferent to Plaintiff's eye condition in violation of the Eighth Amendment when they failed to diagnose his right orbital fracture, failed to follow the recommendation of the specialist from John Stroger Hospital, delayed treatment, and failed to follow repeated specialist recommendations.

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

**Count 3** – Shearing, Trost, Johnson, Sutterer, Lochhead, and Walls were medically negligent pursuant to state law when they failed to diagnose Plaintiff's right orbital facture, failed to follow the recommendation of the specialist from John Stroger Hospital, delayed treatment, and failed to follow repeated specialist recommendations;

**Count 4** – Wexford, Shearing, and Walls violated Plaintiff's First and Fourteenth Amendment rights when they retaliated against Plaintiff for filing grievances over the denial of medical care.

As to Plaintiff's **Count 1**, for purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi–Car,*

*Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Here Plaintiff has alleged that Wexford had a policy of not approving eye surgery because it was too costly. He has alleged that his surgery to repair a broken orbital floor, which the Court assumes is a serious medical need for the sake of this order, was delayed more than 4 years because of Wexford's policies. As a result of the delay, Plaintiff suffered from numerous symptoms, including pain, dizziness, headaches, blurred vision, ear ringing, and double vision. He also alleges that he was put at increased risk of developing glaucoma by the failure to treat his blocked tear ducts, which were a side effect of his initial injury. Plaintiff also alleges that Wexford has a policy of providing insufficient treatment for eye conditions generally. Plaintiff has alleged that his medical care providers acted pursuant to these policies and that as a result of these policies, he was harmed. That is sufficient to state a claim at this stage. **Count 1** shall proceed on Plaintiff's claims that Wexford had unconstitutional policies regarding the cost of treatment and treatment for eye conditions.

Plaintiff has also attempted to bring a claim based on respondeat superior against Wexford. Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir. 2006). *See also Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 694 (1978). Respondeat superior is therefore not an independent basis

for liability pursuant to § 1983.  While the Seventh Circuit has expressed some skepticism about the continued vitality of case law prohibiting claims against private corporations except in cases in where a policy caused the harm, *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 786 (7th Cir. 2014), the *Shields* court ultimately continued to extend *Monell* to private corporations and require that plaintiffs show that their injuries were caused by a Wexford policy, custom, or practice of deliberate indifference.  *Id*. at 795.  Given this precedent, Plaintiff's claims based on the alternative theory of respondeat superior shall be dismissed, to the extent they are encompassed in **Count 1**.

**Count 2** generally alleges that the individual defendants were deliberately indifferent to Plaintiff's eye condition.  Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016).  In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).  An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference.  *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

The Court presumes that Plaintiff's eye condition and its attendant symptoms constitute a serious medical need for the purposes of this order. Plaintiff has named Wexford in connection with this count, but Wexford must be dismissed from **Count 2**, because as discussed more fully above, Wexford can only be held responsible on a theory that employees acted pursuant to an unconstitutional Wexford policy or custom, and that allegation is already fully encompassed by **Count 1**.

Plaintiff has adequately alleged deliberate indifference against Defendants Shearing, Trost, Johnson, Lochhead, and Walls. Plaintiff has alleged that he suffered from a serious medical need. As to Shearing, he has further alleged that Shearing repeatedly told him that he was not in need of medical care and denied him medical care, despite the persistence of Plaintiff's symptoms. The denial of medical care to a prisoner suffering from a serious medical need is textbook deliberate indifference.

However, Plaintiff's claims against Shearing must be dismissed at this time on statute of limitations grounds. Although typically, affirmative defenses such filing after the statute of

limitations are litigated by the parties after service, *see Jones v. Bock*, 549 U.S. 199, 212 (2007), a Court may invoke these defenses on § 1915A review when the availability of the defense is apparent on the face of the Complaint. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

Section 1983 does not contain its own statute of limitations, and so § 1983 claims are governed by the law of the state where the alleged violation occurred. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001)(citing *Wilson v. Garcia*, 471 U.S. 261. 276 (1985)). In this District, § 1983 claims are governed by Illinois' 2-year statute of limitations. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). However the Court is also bound to apply a state's tolling rules, and in Illinois, the operation of 735 ILCS 5/13-216 has the effect of tolling the limitation period while a prisoner completes the administrative grievance process. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008); *Johnson*, 272 F.3d at 521. The statute is only tolled while the prisoner exhausts his administrative remedies; it is not tolled during the time period between the injury and the start of the administrative remedy process. *Santiago v. Snyder*, 211 F. App'x 478, 480 (7th Cir. 2006) (rejecting plaintiff's argument that he was entitled for 8 more months of tolling to account for the time between his injury and his grievance when he was allegedly pursuing informal remedies).

The last time Plaintiff saw Dr. Shearing was April 26, 2013, more than 4 years prior to the time Plaintiff filed suit. Plaintiff argues in his memorandum in support of the Complaint that his claims are timely as to Shearing due to the continuing violation doctrine. The continuing violation doctrine holds that a violation keeps accruing for so long as it continues to happen. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001); *see also Turley v. Rednour*, 729 F.3d 645,

651 (7th Cir. 2013). For example, in a medical deliberate indifference claim, the claim continues to accrue as long as the condition goes untreated. This allows a plaintiff to reach back to the beginning of a constitutional violation even if that beginning lies outside of the statute of limitations period, in lieu of requiring litigants to bring suit over every single incident of unlawful conduct. *Id.* However, the termination of injury is not the only means of claim accrual; when a defendant loses the ability to address the plaintiff's condition, the claim immediately accrues as to that person. *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013) (finding summary judgment on statute of limitations grounds appropriate where defendant retired 3 weeks before prisoner received adequate treatment and prisoner did not bring suit until 2 years after treatment date).

Although it is not clear exactly when Shearing left his employment at Menard, the Complaint affirmatively alleges that Shearing was not the medical director anymore as of October 5, 2014. In fact, Plaintiff alleges that he specifically sought treatment because he had been told that Shearing had left and someone else would be making the medical decisions. Thus, it is clear from the Complaint that as of October 5, 2014, Shearing was no longer able to offer Plaintiff treatment to address his condition. Giving Plaintiff the benefit of the inference most favorable to him and assuming that Shearing was employed up to October 4, 2014, Plaintiff would have had to bring suit no later than October 4, 2016. He is almost a year too late. Even assuming that the statute of limitations was tolled while Plaintiff exhausted his November 16, 2016 grievance,[1] Plaintiff would only be entitled to 27 days of tolling. He would have had to file suit no later than October 31, 2016. Because Plaintiff did not file suit until September 20, 2017,

_____

[1] This is a dubious proposition because Plaintiff filed a grievance more than 60 days after Shearing left Menard, which likely makes it untimely.

his claims against Shearing are barred by the statute of limitations, and Shearing will be **DISMISSED with prejudice** from **Count 2.**

Plaintiff has also stated a claim against Trost for deliberate indifference. Although Trost did attempt to treat Plaintiff's symptoms regarding pus drainage, he did not take action when those symptoms persisted. Additionally, Plaintiff has alleged that Trost delayed referring him for surgery for months after it was approved, which caused Plaintiff additional pain and suffering unnecessarily. These facts also state a claim for deliberate indifference, and **Count 2** will proceed against Trost.

Additionally, Plaintiff has stated a deliberate indifference claim against Johnson. Plaintiff has alleged that he saw Johnson once, on January 30, 2013, and that Johnson failed to perform an eye examination, told him that he would not approve surgery for reasons of cost and Wexford policy, and referred him to the medical director, who had no optometry training or experience. Prison officials must give medical treatment that is adequate to the severity of the condition and consistent with professional norms. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). As Plaintiff has alleged that he had a legitimate eye condition in need of treatment, and that Johnson responded inappropriately, he has adequately stated a claim for deliberate indifference against Johnson.

It is possible that Plaintiff's claim against Johnson is also barred by the statute of limitations for the same reasons discussed above. However, unlike Shearing, Plaintiff has not affirmatively alleged Johnson left his position so as to be unable to correct the constitutional violation as of a certain date. The exact contours of Johnson's employment situation are also unclear. Plaintiff has alleged that he worked for a subcontractor to Wexford, but has not been explicit as to whether Johnson was the on-site optometrist or whether he was an outside medical

provider.  If Johnson worked on-site, the claim would likely accrue on his last day of employment, which is not currently in the record.  But if he was a one-time referral, it is possible the claim accrued on January 30, 2013.  Because the statute of limitations defense is not clear from the face of the Complaint, as with Shearing, the Court will not dismiss Johnson at this time.

As to Lochhead, Plaintiff has also stated a valid deliberate indifference claim.  Plaintiff alleges that when Lochhead examined him, she did a cursory examination, and then told him she would not recommend surgery based on non-medical reasons per Wexford's policies.  As Plaintiff has alleged that he needed surgery at the time of his examination, he has made a plausible allegation that Lochhead's conduct amounted to deliberate indifference.  As with Johnson, it is possible that Lochhead has a statute of limitation defense, but as her work history is not included with the Complaint, the defense is not clear from its face, and the Court will not dismiss Lochhead at this time.

Finally, as to Walls, Plaintiff has alleged that he filed a grievance detailing his lack of medical care, and Walls denied it on June 11, 2013.  Plaintiff has not alleged that Walls was actively involved in providing medical treatment at any time.  His sole contention is that Walls condoned or turned a blind eye to the behavior of the medical department when she responded that Plaintiff had received adequate medical care.  An inmate's correspondence with a prison administrator may show a basis for personal liability where the correspondence shows that the official had the requisite knowledge of the deprivation at issue.  *Perez*, 792 F.3d at 781-82.  If the condition required the officer to exercise his or her authority and the official refused to do so, the official may have been deliberately indifferent.  *Id.*  at 782.

Here the Complaint does not delineate the exact scope of Walls' authority.  It is not clear whether she could have acted to force the medical providers to secure surgery for Plaintiff or

take his eye condition more seriously. It is doubtful that the June 11, 2013 response adequately demonstrates deliberate indifference because it is clear from the grievance that Walls investigated Plaintiff's complaints and found that he had been treated. However, the Complaint does not provide facts that would tend to show that Walls was the type of official entitled to rely on the medical judgment of others. Plaintiff has also alleged that he continued to file grievances after the June 11th response, and if Walls saw those grievances and took no further action, she could have been deliberately indifferent. The Court will permit further factual development on Plaintiff's claim against Walls and permit **Count 2** to proceed as to her.

Plaintiff has also alleged that Sutterer was deliberately indifferent but the Court can only find a single mention of him in the statement of claim: "Plaintiff was seen by Dr. Sutterer on October 7, 2016, over seven (7) weeks after August 15, 2016 off-site specialist visit." (Doc. 1, p. 18). This lone allegation does not support a claim for deliberate indifference. It may suggest that Sutterer knew about Plaintiff's condition, but without any account of what action Sutterer took or failed to take, it provides no plausible allegation that Sutterer had a culpable state of mind. Sutterer will be **DISMISSED** from **Count 2** without prejudice for failure to state a claim against him.

**Count 3**, alleging negligence pursuant to state law, must be dismissed. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), as long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has

supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2017). A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b). It is not enough that Plaintiff has evidence that a doctor told him he needed surgery in 2012, and that other doctors agreed with him and expressed concern that Plaintiff did not get his surgery prior to March 2017; Plaintiff must actually find a doctor willing to put in writing that he has a medical malpractice case.

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a

certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the claim in **Count 3** shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of **Count 3** may become a dismissal **with prejudice.** *See* Fed. R. Civ. P. 41(b).

Finally, **Count 4**, alleging retaliation, must also be dismissed. To succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

The allegation is insufficient as to Wexford. As explained more fully above, a corporation can be held liable only for an unconstitutional practice, policy or custom. Plaintiff has not alleged that Wexford has a policy or practice of retaliating against inmates for filing grievances by withholding medical care. Plaintiff argues that Wexford is responsible for Shearing's conduct, but this would be a repondeat superior theory of liability, and as discussed above, there is no respondeat superior liability under § 1983. Therefore, allegation is insufficient as to Wexford, and they will be dismissed from **Count 4**.

Plaintiff may have articulated a valid retaliation claim against Shearing, but for the reasons explained above, the statute of limitations has run as to him. Plaintiff is alleging that Shearing found out about Plaintiff's grievances and withheld medical treatment on that account. Shearing could only withhold medical treatment so long as he was employed as the medical director; once he left the prison, Plaintiff's retaliation claim would have accrued. As Plaintiff has alleged that Shearing was no longer at the prison as of October 5, 2014, he would have had to bring his retaliation claim within 2 years of that time. He failed to do so, and so any retaliation claim against Shearing is barred by the statute of limitations.

Plaintiff has also alleged that Walls retaliated against him, but his allegations on this point are not plausible. Plaintiff filed a grievance on April 23, 2013 and when Shearing saw him 3 days later on April 26 Plaintiff alleges that Shearing told him he wasn't getting surgery and he could file all the grievances he wanted. This is the basis for Plaintiff's retaliation claim against Shearing, which is barred by the statute of limitations. Plaintiff alleges that Walls' response to his March 26, 2013 grievance on June 11, 2013 shows that she condoned Shearing's retaliation. Plaintiff has not alleged that the March 26th grievance addressed any retaliation; and his interaction with Shearing did not occur until a month later. Walls could not have condoned Shearing's alleged retaliation because Shearing's retaliation was not and could not have been the subject of the March 26th grievance. Plaintiff has not alleged any of his other grievances specifically addressed the retaliation, or that Walls responded to those grievances. In the absence of any allegations that Walls had specific knowledge of retaliation, Plaintiff's conclusion that she knew about it and condoned it is entirely speculative. All Plaintiff has alleged is that he filed a grievance regarding his medical treatment, and Walls responded unfavorably to it. If this were sufficient to state a retaliation claim, every denied grievance could be the basis of such a claim, a

result that would be entirely unworkable and unfair.  **Count 4** will be **DISMISSED without prejudice** as to Walls.  If Plaintiff has additional facts that would make a retaliation claim plausible, he is free to file an amended complaint raising them.

### Pending Motions

Plaintiff filed a Motion for service at government expense with the Complaint.  (Doc. 4).  Plaintiff was granted leave to proceed IFP on September 28, 2017.  (Doc. 6).  Pursuant to Fed. R. Civ. P. 4(c)(3), the Court is required to order service if the plaintiff is authorized to proceed in forma pauperis.  Because the Court is already obligated to order service, Plaintiff's Motion is **MOOT**.  (Doc. 4).

Plaintiff's Motion for Recruitment of Counsel shall be referred to a United States Magistrate Judge for disposition.  (Doc. 3).

Plaintiff has requested permanent injunctive relief.  The Court has not understood this request to include a request for a preliminary injunction, as most of the request appears future-oriented, and Plaintiff has alleged that he received surgery in March 2017.  If Plaintiff wishes the Court to consider issuing a preliminary injunction, he should file a motion on that point.

### Disposition

**IT IS HEREBY ORDERED** that **Counts 1-2** survive threshold review. Wexford is **DISMISSED with prejudice** from **Count 2**.  **Count 3** is **DISMISSED without prejudice** for failure to submit the necessary affidavits.  **Count 4** is **DISMISSED with prejudice** as to Wexford and Shearing; and **without prejudice** as to Walls.  Shearing is **DISMISSED** from this action **with prejudice** as any claims against him are barred by the statute of limitations.  Sutterer is **DISMISSED** from this action **without prejudice** for failure to state a claim.  Plaintiff's Motion for Service at Government Expense is **DENIED** as **MOOT**.  (Doc. 4).

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim(s) in **Count 3** against Defendants **Shearing, Trost, Johnson, Sutterer, Lochhead, and Walls**, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before **January 2**, **2018**). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 3** may become a dismissal **with prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Wexford Health Sources, Inc., John Trost, Eric Johnson, Christine Lochhead, and Gail Walls: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 27, 2017**

_s/J. Phil Gilbert_
**U.S. District Judge**