IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMOND CHRISTMAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 17-CV-1006-SMY |
| | ) |
| **WEXFORD HEALTH SOURCES, INC., et al,,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Demond Christmas, an inmate of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). He claims Defendants have been deliberately indifferent in their treatment of a right orbital fracture.

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 105), recommending granting the Motions for Summary Judgment filed by Defendants Dr. Trost, Wexford Health Sources, Inc. and Gail Walls (Docs. 87 and 94). Plaintiff filed a timely objection (Doc. 106). For the following reasons, Judge Daly's Report and Recommendation is **ADOPTED**.

## Background

Plaintiff sustained an injury to his right eye in June 2012 while housed in Cook County Jail.[1] A CT scan revealed an orbital face fracture without inferior rectus entrapment, and no further

---

[1] An exhaustive account of Plaintiff's medical care is detailed in the "Findings of Fact" section of Judge Daly's Report (Doc. 105, pp. 3-12). Because no specific objection has been made to that portion of the Report, the Court adopts those findings of fact and will only summarize the relevant facts herein.

treatment was recommended. Plaintiff reported the injury at his initial intake into IDOC custody and upon his transfer to Menard in November 2012.

On January 30, 2013, Plaintiff was evaluated by Dr. Eric Johnson, O.D., to whom he reported diplopia (double vision) peripherally and requested surgery. Dr. Johnson advised Plaintiff that surgery could correct the issue without causing diplopia in his primary vision. Plaintiff was seen at sick call on March 22, 2013 and reported that he was suffering right eye pain after hitting his eye getting down from his bunk. He saw Dr. Shearing two days later and reported that he was experiencing blurred and double vision and a persistent headache since hitting his eye. After evaluating plaintiff, Dr. Shearing prescribed ibuprofen and ordered Plaintiff's medical records from the time of the initial injury and the CT scan. Apparently dissatisfied, Plaintiff filed a grievance that day against "the eye doctor" on the grounds that he was not receiving adequate treatment for his broken eye socket.

Dr. Shearing subsequently received and reviewed Plaintiff's records and concluded that no further workup or treatment (including ongoing pain medication) was indicated. He also noted that Plaintiff's demands for pain medication appeared to be drug-seeking behavior.

Defendant Gail Walls, Director of Nurses at Menard, responded to Plaintiff's March 25, 2013 grievance, stating that he had been seen multiple times by doctors and nurses and that Dr. Shearing had indicated no further treatment was necessary. Plaintiff then filed a grievance regarding the accuracy of Dr. Shearing's statements relayed by Walls—that is, that his eye socket is still broken.

In October 2014, Plaintiff reported to sick call with a headache from his right eye and occasional double vision. He was then seen by Dr. Trost, Medical Director at Menard, complaining of chronic drainage from his right eye and allergies. Dr. Trost prescribed Claritin for

the allergies and two antibiotics for the eye discharge and referred him to the Optometry Clinic for follow-up. Plaintiff was then seen by Defendant Dr. Lochhead[2] complaining of headaches from his right eye and drainage. Dr. Lochhead added a recommendation for warm compresses to the eye.

On March 7, 2016, Plaintiff was again seen at the Optometry Clinic at Menard and Dr. Eyrich referred him for an outside ophthalmology consult. This referral was discussed in collegial review by Dr. Trost and Dr. Garcia, and Dr. Garcia approved the request. As a result, Plaintiff was sent to Dr. Unwin on April 12, 2016, who found chronic giant papillary conjunctivitis (inflammation of the conjunctiva due to allergy) of the right eye and possible glaucoma. A sample of the discharge from Plaintiff's eye did not reveal any infection, and Unwin recommended a full work-up for possible glaucoma.

Plaintiff was seen again by Dr. Trost on April 29, 2016 on referral from a nurse practitioner, and Dr. Trost referred him to the Optometry Clinic for further evaluation and treatment. Plaintiff was again referred to Dr. Unwin for glaucoma evaluation, which was again approved on collegial review. When Plaintiff complained of constant tearing and the presence of pus and a lump in the corner of his right eye, Dr. Unwin recommended referral to an oculoplastic surgeon for evaluation. An optometrist at Menard submitted a request for the referral for collegial review which was approved. Plaintiff was then seen by Dr. Couch on December 1, 2016, who diagnosed a right tear duct obstruction and recommended a surgical procedure to restore its function.

On January 17, 2017, Plaintiff was seen at sick call complaining of two weeks of chest pain and rapid heartbeat. He asked about his eye surgery and had pus in his right eye, but no notes from Dr. Couch's evaluation was in his chart. Plaintiff's vital signs and EKG were normal, and the

---

[2] Dr. Lochhead has yet to be served in this matter and there is a pending Order (Doc. 116) addressing her status.

nurse practitioner prescribed Metoprolol, weekly blood pressure checks and a mental health evaluation for anxiety and ordered copies of Dr. Couch's consultation.

On January 18, 2017, Dr. Sutterer requested a referral for the surgical procedure recommended by Dr. Couch, which was discussed in collegial review and approved. Surgery was performed on March 1, 2017, resolving both his drainage issue and most of his other symptoms, including headaches, dizziness, double vision and blurry vision. However, Plaintiff claims that the delay in getting surgery caused him to have a heart condition.

## Discussion

As Plaintiff filed a timely objection to the Report, this Court must undertake a *de novo* review of Judge Daly's findings and recommendations. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). De novo review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Id.* Consistent with these standards, the Court has conducted a de no review of those portions of the Report subject to objection.[3]

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[3] Plaintiff's Objection does not identify which portions of the Report he contests. He merely restates his assertions that Defendants are liable in largely conclusory fashion. Rule 72(b) and the corresponding Local Rule require specific objections. However, given Plaintiff's *pro se* status, the Court will construe the Objection as a challenge to Judge Daly's legal conclusions and review those de novo.

law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Here, the dispositive question is whether there is any evidence from which a reasonable jury could conclude that Defendants were deliberately indifferent to Plaintiff's condition.

Prison officials inflict cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on such a claim, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The second element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

### Dr. Trost

"A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). Plaintiff has presented no evidence to support such a finding as to Dr. Trost. Dr. Trost saw Plaintiff in person twice. The first time, in 2014, he addressed Plaintiff's complaints of allergies and drainage from his right eye with an allergy medication and two types of antibiotics for the drainage, and referred him to the prison's eye care clinic. The second time,

in 2016, Dr. Trost (a generalist) referred Plaintiff to the eye care clinic for treatment. And, when Dr. Trost was involved in collegial reviews of referral recommendations, those recommendations were always approved. There is no evidence that Trost's treatment decisions were a departure from accepted medical standards at all, let alone a substantial enough departure to suggest he did not utilize professional judgment.

Moreover, the fact that Dr. Trost was Medical Director during a portion of Plaintiff's time at Lawrence does not render him liable for the actions of other staff members or for the alleged delays in Plaintiff's treatment. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (there is no *respondeat superior* liability for claims under § 1983); *Garvin v. Armstrong*, 236 F.3d 896, 898–99 (7th Cir. 2001) (a medical director cannot be held vicariously liable for actions of nursing staff).

## Gail Walls

In order to establish liability under § 1983, a plaintiff must demonstrate that a given defendant was personally involved in the alleged constitutional deprivation. Prison officials who simply process or review inmate grievances lack personal involvement in the conduct forming the basis of the grievance. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). According to the record, the extent of Walls' involvement was reviewing Plaintiff's March 25, 2013 grievance and drafting a response that Dr. Shearling indicated no further treatment was necessary. This is insufficient as a matter of law to support liability.

Plaintiff argues that Walls was providing treatment once she reviewed his records. To the extent he suggests she should have overruled Dr. Shearling's determination that no further treatment was necessary, the argument fails. "[A] medical care system requires nurses to defer to

treating physicians' instructions and orders in most situations, [although] that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010).  However, a nurse does not have a responsibility to second-guess a doctor's medical judgment when nothing about the course of care generally raised any obvious risks of harm. *See McCann v. Ogle Cty.*, 909 F.3d 881, 887 (7th Cir. 2018).

## Wexford

The bulk of Plaintiff's Objection focuses on Wexford's liability.  The main thrust is that Wexford is responsible under the doctrines of *respondeat superior* and vicarious liability for the actions or inactions of its employees. (Doc. 106, pp. 1-3).  In particular, Plaintiff argues Wexford is liable for "refusing to take corrective action measures" and "allowing or condoning the actions of its employees." (Doc. 106, p. 2).  He is incorrect.

A private corporation is shielded from *respondeat superior* and vicarious liability under Section 1983. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).  The only avenue available to Plaintiff is through *Monell* liability, under which he must demonstrate that the wrongdoers acted pursuant to an unconstitutional policy or custom of Wexford's, and that the policy or custom was the moving force behind the constitutional violation. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016); *Shields*, 746 F.3d at 790; and *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (*citing Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).  Plaintiff has produced no evidence from which a jury could reasonably conclude that Wexford had a policy or practice that was the moving force behind any constitutional violation.  Plaintiff states that Wexford "has implemented a cost cutting policy[,] practice and custom, resulting in the failure to provide constitutionally adequate healthcare to Plaintiff." (Doc.

106, p. 1). The record contains no evidence suggesting that such a policy, if it exists, played a role in any of the decisions made in his case. Plaintiff also suggests that Wexford has an "overarching practice to not follow written policies of Wexford or IDOC[.]" (*Id.,* p. 2). However, he fails to point to any evidence demonstrating that such a practice was a moving force behind his alleged constitutional injury.

## Disposition

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Daly's Report and Recommendation (Doc. 105) in its entirety. Accordingly, Defendants' Motions for Summary Judgment (Docs. 87 and 94) are **GRANTED** and Plaintiff's claims against Defendants Wexford, Trost and Walls are **DISMISSED with prejudice.** The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

Further, Defendants' Motion to Strike (Doc. 102) is **GRANTED** as to pages 29-51 of Document 100; the Clerk of the Court is **DIRECTED** to redact that portion of the document. Plaintiff's Motion to Seal (Doc. 107) is **DENIED.**

**IT IS SO ORDERED.**

**DATED:  April 24, 2020**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**